NOAH A. KATSELL (Bar No. CA-217090)
noah.katsell@dlapiper.com
ASHLEIGH ANGELETTI (Bar No. CA-265392)
Ashleigh.Angeletti@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel:   619.699.2700
Fax:   619.699.2701

Attorneys for Plaintiff
Argonaut Manufacturing Services, Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARGONAUT MANUFACTURING SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> DNANUDGE LIMITED, <br><br> Defendant. | CASE NO. '21CV1099 MMAVG <br><br> **ARGONAUT MANUFACTURING SERVICES, INC.'S COMPLAINT FOR:** <br> (1) **BREACH OF CONTRACT** <br> (2) **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** <br> (3) **ANTICIPATORY REPUDIATION PURSUANT TO CAL. CIV. CODE § 1440** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Argonaut Manufacturing Services, Inc. ("Argonaut" or "Plaintiff"), by and through its undersigned counsel, with knowledge with respect to its own acts and on information and belief as to all other matters, files this complaint against Defendant DnaNudge Limited ("DnaNudge" or "Defendant"), as follows:

## NATURE OF THIS ACTION

1. Argonaut seeks specific performance from DnaNudge for breach of its contract with Argonaut for the manufacture and sale of reagents to be used in COVID-19 tests.

## PARTIES

2. Argonaut Manufacturing Services, Inc. is a corporation organized under the laws of Delaware with its principal place of business at 2841 Loker Avenue East, Carlsbad, CA 92010.

3. DnaNudge Limited is a British company with its principal place of business at Level 11, The Translation and Innovation Hub, Imperial College White City Campus, London, England, W12 0BZ.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to United States Code, Title 28, § 1332 (diversity of citizenship). The matter in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity exists between the parties.

5. This Court has personal jurisdiction over Defendant because Defendant has expressly consented to jurisdiction through its contract with Argonaut. The Master Supply Agreement between the parties provides that "[DnaNudge] hereby waives all objections to, and consents to the jurisdiction of the California Courts."

6. Venue is proper in this judicial district pursuant to United States Code, Title 28, § 1391(b)(2) because a substantial part of the events or omissions which gave rise to the claim occurred in this district. Alternatively, venue is proper in this judicial district pursuant to United States Code, Title 28, § 1391(b)(3).

## GENERAL ALLEGATIONS

7. Argonaut provides contract manufacturing services to the biotechnology industry. Among the many services Argonaut offers is the manufacture of chemical reagents.

8. Chemical reagents are substances, mixtures, or compounds that, when added to a system, can either cause a chemical reaction or test whether a reaction will occur.

9. DnaNudge manufactures, markets, and sells, among other things, a rapid COVID-19 test called CovidNudge. CovidNudge is a "near-patient" or "point-of-care" test. This means that the testing is not performed by a traditional laboratory. Rather, users can either be tested in a DnaNudge store or order a test kit online, provide a saliva sample, and send the sample back to DnaNudge for testing.

10. DnaNudge's CovidNudge test consists of a DnaCartridge (the "Cartridge"), which DnaNudge describes as "an entire Lab on a chip,"[1] into which the user's saliva is inserted. The Cartridge contains a chemical reagent called a lyophilized master mix ("Master Mix"), which reacts with the user's saliva to detect the presence of COVID-19.

11. In August 2020, the government of the United Kingdom publicly announced that it had placed a £161 million order with DnaNudge to supply the Department of Health and Social Care with 5.8 million CovidNudge tests.

12. DnaNudge needed a supplier for the Master Mix for its CovidNudge tests and reached out to Argonaut for assistance. In the summer of 2020, the parties first began exploring a business relationship whereby Argonaut would supply DnaNudge with the Master Mix to be inserted into DnaNudge's Cartridges.

13. These talks eventually resulted in the parties entering into the Master Supply Agreement (the "MSA") on September 3, 2020.

---

[1] https://www.dnanudge.com/index.php.

14. Under the MSA, Argonaut was to supply DnaNudge with the Master Mix, packaged in LyoDose beads (the "Beads") for use in DnaNudge's CovidNudge tests. The plan was for DnaNudge's manufacturer, Jabil Inc. ("Jabil") to incorporate the Beads into the Cartridges.

15. The MSA's Initial Term was to "commence on the Effective Date [September 3, 2020] and . . . continue for a period of four (4) years."

16. After expiration of the Initial Term, the MSA would automatically renew for additional one-year terms "unless either Party provides written Notice of non-renewal at least ninety (90) days prior to the end of the then-current term[,]" unless terminated earlier.

17. The terms of the MSA required Argonaut to commit a significant share of its lyophilization manufacturing capacity to DnaNudge. This commitment to DnaNudge required Argonaut to turn down other customers it could otherwise have served.

18. Accordingly, the MSA contains an initial "Take-Or-Pay" period with respect to the Beads. Pursuant to the MSA, DnaNudge agreed to pay a specific price per Bead delivered by Argonaut and "guarantee[d] to Argonaut a take-or-pay minimum of 5.75 million beads at this price."

19. The MSA further provides, "[i]n the event that DnaNudge fails to purchase and/or accept delivery of the 5.75 million beads listed, it will pay" the agreed upon price per Bead in the MSA "to Argonaut for each such bead[.]"

20. Per the MSA, if DnaNudge failed to purchase the number of Beads for which it contracted, the amount due for Beads not purchased would be calculated by multiplying the purchase price by the number of Beads outstanding. The number of Beads outstanding is "the total of remaining schedules of production multiplied by the minimum batch size."

21. In February of 2021, the parties mutually agreed to increase the price per Bead pursuant to Change Order 288, under which the parties also agreed to

modify the formulation of the Beads, as discussed more fully below.

22. The increased price per Bead would apply to 5.1 million Beads left to be shipped under the MSA. This Change Order increased the total value of the MSA significantly.

23. The parties agreed to a minimum batch size of 40,000 Beads.

24. Under the MSA "[a]fter the Take-Or-Pay period," DnaNudge agreed to provide "a 12 month rolling forecast with a rolling 4 month fixed, firm order . . . with Purchase Orders [("PO")] securing the fixed period, firm order period."

25. Under the MSA, Argonaut was required to deliver Beads "in accordance with delivery schedules agreed to between the Parties and set forth in [DnaNudge's] PO[.]"

26. The MSA also set forth an "Example Production Schedule" which was "to be modified under mutual agreement[.]"

27. Argonaut was further required to "use commercially reasonable efforts to deliver all Products on or before the delivery date set forth in the applicable PO[,]" but the MSA clarifies that "[a]ny time quoted for delivery is an estimate only[.]"

28. Further, "[i]f [Argonaut] has delayed shipment of all or any [Beads] for more than twenty (20) days after the delivery date set forth in the applicable PO **and if such delay is not due to any action or inaction of [DnaNudge]** or otherwise excused in accordance with the terms and conditions of [the MSA]" DnaNudge was permitted to "cancel the portion of the related PO covering the delayed Products by giving [Argonaut] written notice[,]" with such cancellation serving as DnaNudge's "sole remedy" for delivery delays.

29. The MSA explicitly provides that "**no delay in the shipment or delivery of any Products relieves [DnaNudge] of its obligations under [the MSA].**"

/////

30. The MSA further provides that "governmental taxes . . . or duties imposed by governmental authorities that are applicable to the import or purchase of the [Beads]" are not included in the price of the Beads, and "[i]f [Argonaut] is required to collect and remit any such taxes and/or duties, then [DnaNudge] shall add such taxes/duties to the invoice for sale of the Products, and [Argonaut] agrees to remit such taxes/duties as collected to the proper authorities."

31. The parties worked together to create the delivery schedules based on DnaNudge's demand, and its capacity to store and utilize the Beads.

32. DnaNudge repeatedly requested that Bead shipments be delayed or otherwise indicated that it was ill-equipped to handle the volume of Beads contemplated by the various delivery schedules. Argonaut worked in good faith to modify its plans and comply with DnaNudge's requests.

33. Certain other actions and inactions by DnaNudge caused further delays in the project timeline. For example, DnaNudge was delayed in providing specifications for the manufacture, storage, and delivery of the Beads and in approving documentation necessary for Argonaut to manufacture the Beads.

34. DnaNudge also requested changes to the Bead composition—specifically, the addition of RNAse Inhibitor to the Master Mix—that delayed production.

35. Jabil, the manufacturer DnaNudge had selected to incorporate the Beads into the Cartridges, caused additional delays and complications.

36. Argonaut went to great lengths to ensure the success of the parties' relationship. Argonaut patiently worked with DnaNudge to revise the various delivery schedules to suit DnaNudge's needs, assisted DnaNudge with fulfilling its basic obligations under the MSA, and even went out of its way to provide expertise and guidance to Jabil.

37. On April 20, 2021, DnaNudge, through its counsel, sent Argonaut correspondence purporting to terminate the MSA (the "Letter").

38. The Letter claimed that DnaNudge was "entitled to terminate the MSA under section 5.2[,]" and further purported to cancel all outstanding purchase orders pursuant to section 1.6.1 of the MSA, claiming that Argonaut "was consistently behind in the delivery schedule[.]"

39. DnaNudge claimed that these delays were grounds to terminate the MSA under section 5.2, which permits either Party to terminate the MSA "upon written notice to the other party . . . if such other Party commits a material breach of [the MSA] and fails to cure such material breach within thirty (30) days after receiving written notice thereof[.]"

40. In purporting to terminate the MSA, DnaNudge did not provide Argonaut notice and an opportunity to cure its alleged breach.

41. More importantly, as set forth above, the "delays" of which DnaNudge complained were not attributable to Argonaut.

42. The MSA is clear that delays are not grounds for termination. Section 1.6.1 of the MSA explicitly provides that "no delay in the shipment or delivery of any [Beads] relieves [DnaNudge] of its obligations under [the MSA]."

43. The Letter further stated that "there is no basis to claim a price for quantities [of Beads] not delivered."

44. Finally, the Letter purportedly gave "notice of cancellation of all undelivered quantities under the MSA in accordance with Section 1.6.1," again claiming Argonaut's delays entitled DnaNudge to cancel.

45. Section 1.6.1 of the MSA specifies that purchase orders can only be cancelled due to delay "if such delay is not due to any action or inaction of [DnaNudge]."

46. DnaNudge has not paid the full amount owed to Argonaut under the Take-Or-Pay provision of the agreement.

47. Further, Argonaut has made Value-Added Tax ("VAT") payments on behalf of DnaNudge, for which it has yet to be reimbursed.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

48. Argonaut incorporates by reference Paragraphs 1 to 47 as if fully set forth herein.

49. Argonaut and DnaNudge entered into the MSA on September 3, 2020.

50. The MSA is a valid and enforceable contract, and both parties clearly understood their obligations thereunder.

51. DnaNudge was obligated to pay for 5.75 million Beads at a certain price per Bead.

52. DnaNudge was further obligated to reimburse Argonaut for taxes paid on DnaNudge's behalf.

53. Argonaut has performed all conditions, covenants, and promises required to be performed on its part under the MSA, except to the extent excused, waived, or made impossible by DnaNudge's conduct.

54. DnaNudge breached the MSA when it sought to terminate the MSA and all outstanding purchase orders without justification.

55. DnaNudge further breached the MSA when it refused to pay amounts owed to Argonaut under the MSA's Take-Or-Pay provision.

56. Finally, DnaNudge breached the MSA by failing to reimburse Argonaut for VAT payments made on DnaNudge's behalf.

57. As a direct and proximate result of DnaNudge's breach of the MSA, Argonaut has and will continue to suffer damages.

58. Argonaut's legal remedy for DnaNudge's breach of the Take-Or-Pay provision of the MSA is inadequate and Argonaut thus seeks specific performance of that provision of the MSA.

/////

/////

/////

## SECOND CLAIM FOR RELIEF

### Breach of the Implied Covenant of Good Faith and Fair Dealing

59. Argonaut incorporates by reference Paragraphs 1 to 58 as if fully set forth herein.

60. Argonaut and DnaNudge entered into the MSA on September 3, 2020.

61. The MSA is a valid and enforceable contract, and both parties clearly understood their obligations thereunder.

62. The MSA contained an implied covenant of good faith and fair dealing by and between the parties, which prohibited either party from engaging in any activity or conduct which would prevent the other party from receiving the benefits of the agreement.

63. DnaNudge breached the implied covenant of good faith and fair dealing inherent in the MSA.

64. Argonaut has performed all conditions, covenants, and promises required to be performed on its part under the MSA, except to the extent excused, waived, or made impossible by DnaNudge's conduct.

65. As a direct and proximate result of DnaNudge's breach of the MSA, Argonaut has and will continue to suffer damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### Anticipatory Repudiation Under California Civil Code 1440

66. Argonaut incorporates by reference Paragraphs 1 to 65 as if fully set forth herein.

67. Argonaut and DnaNudge entered into the MSA on September 3, 2020.

68. The MSA is a valid and enforceable contract, and both parties clearly understood their obligations thereunder.

69. DnaNudge was obligated to pay for 5.75 million Beads at a certain price per Bead.

/////

70.     DnaNudge was further obligated to reimburse Argonaut for taxes paid on DnaNudge's behalf.

71.     Argonaut has performed all conditions, covenants, and promises required to be performed on its part under the MSA, except to the extent excused, waived, or made impossible by DnaNudge's conduct.

72.     DnaNudge anticipatorily breached the MSA when it purported to terminate the MSA and all outstanding purchase orders without justification.

73.     DnaNudge further anticipatorily breached the MSA when it claimed it did not owe further amounts under the MSA despite its Take-Or-Pay obligations.

74.     Finally, DnaNudge anticipatorily breached the MSA by refusing to reimburse Argonaut for VAT payments made on DnaNudge's behalf, as required by the MSA.

75.     As a direct and proximate result of DnaNudge's anticipatory breach of the MSA, Argonaut has and will continue to suffer damages.

76.     Argonaut's legal remedy for the DnaNudge's breach of the Take-Or-Pay provision of the MSA is inadequate and Argonaut thus seeks specific performance of that provision of the MSA.

## **PRAYER FOR RELIEF**

WHEREFORE, Argonaut respectfully requests that the Court grant the following relief:

1. DnaNudge's specific performance of the Take-or-Pay provision of the MSA;
2. Compensatory damages in favor of Argonaut and against DnaNudge according to proof;
3. Attorneys' fees and costs of suit herein pursuant to statute or as otherwise may be allowed by law;
4. Such other and further relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Argonaut hereby demands a trial by jury for each and every one of the foregoing claims for relief so triable.

Dated: June 11, 2021

                              DLA PIPER LLP (US)

                              By: /s/ *Noah A. Katsell*
                                  Noah A. Katsell
                                  Ashleigh Angeletti

                                  Attorneys for Plaintiff
                                  Argonaut Manufacturing Services, Inc.